# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **REGINALD CORNELIUS LATSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16CV00039 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **HAROLD W. CLARKE, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Caitlin Marie Kasmar, Katherine Katz, John B. Williams III, and Timothy J. Coley, BuckleySandler LLP, Washington, D.C., and Elliot M. Mincberg, Washington Lawyers' Committee for Civil Rights and Urban Affairs, Washington, D.C., for Plaintiff; Laura Maughan, Office of the Attorney General, Richmond, Virginia, and Jeff W. Rosen, Pender & Coward, PC, Virginia Beach, Virginia, for Defendants.*

The plaintiff in this civil rights case has moved to compel additional testimony pursuant to Federal Rule of Civil Procedure 30(b)(6), asserting that the designated organizational witnesses were unprepared for their depositions and did not give adequate testimony on the topics for which they were designated. For the reasons that follow, I will grant the motion in part and will permit the plaintiff to serve additional interrogatories and requests for admission on defendant Virginia Department of Corrections ("VDOC").

I.

The allegations in this case were set forth in great detail in my earlier opinion disposing of the defendants' Motion to Dismiss. *Latson v. Clarke*, 249 F. Supp. 3d 838, 844-50 (W.D. Va. 2017). Because I write only for the parties, I will not repeat them here.

The plaintiff's Motion to Compel Additional 30(b)(6) Testimony focuses on six witnesses who were designated to testify on behalf of VDOC. The plaintiff contends that these six witnesses undertook little or no preparation for their depositions and did not give adequate responses to questions on certain topics on which they had been designated to testify.

The Notice of Deposition that the plaintiff issued to VDOC pursuant to Rule 30(b)(6) originally sought testimony on 18 topics, two of which specified a number of subtopics. The parties met and conferred about the notice several times, and the plaintiff ultimately agreed to narrow some of the topics at VDOC's request. VDOC designated witnesses for all of the topics. However, it later notified plaintiff's counsel that some of these witnesses would not be able to testify about topics on which they had been designated. In some cases, VDOC's counsel communicated these limitations less than 24 hours before the depositions were scheduled to begin, and in one case, VDOC's counsel withdrew a designation with only about one hour's notice.

Harold Clarke, the Director of VDOC, is a named defendant in this case and was deposed both in his individual capacity and as a representative of VDOC. He was designated to testify on behalf of VDOC as to, among other things, "[c]ommunications between VDOC and Rappahannock Regional Jail regarding Mr. Latson's treatment and placement." Mem. Supp. Pl.'s Mot. Compel, Williams Decl. Ex. D, App. A ¶ 14, ECF No. 177-5. During his Rule 30(b)(6) deposition, Clarke testified that his only preparation for the deposition was a brief meeting with counsel on the morning of the deposition. Clarke was asked about the nature of communications between VDOC and Rappahannock Regional Jail ("Rappahannock") regarding the decision to move Latson to Marion Correctional Treatment Center ("MCTC"). He was unable to testify about the subject and stated that Keith Dawkins, Manager of Central Classification Services, would have been the person who had those discussions with Rappahannock personnel. VDOC argues that the plaintiff has not been prejudiced by any inadequacies in Clarke's testimony because the plaintiff obtained the information sought from other witnesses, including Dawkins, and from emails produced in discovery.

Ann Horst, M.D., is the attending psychiatrist at MCTC. She was deposed as an individual fact witness and also testified on behalf of VDOC. However, she stated that she was not comfortable answering questions on behalf of VDOC.

Horst testified that her only preparation for the Rule 30(b)(6) deposition had been a short meeting with counsel on the morning of the deposition.

In her capacity as a representative of VDOC, Horst was designated to testify about "[t]he frequency with which Mr. Latson's medications were reviewed and assessed" and "[c]ommunications between VDOC and any other person or entity regarding Mr. Latson's treatment and placement." *Id*. at ¶¶ 6, 15. VDOC counsel limited Horst's testimony on the former topic to administration of psychological medications. Horst could not say how frequently Latson's medications were reviewed and stated that she was unable to discuss his medications without looking at the records. Regarding the latter topic, she testified only to her own communications regarding Latson. VDOC argues that plaintiff's counsel should have introduced Latson's medical records as exhibits during the deposition so that Horst could testify about them. VDOC also argues that the information sought is irrelevant to the plaintiff's claims.

Amanda McGrady is the Psychologist Supervisor at MCTC. She, too, was deposed as both an individual fact witness and a Rule 30(b)(6) witness. On behalf of VDOC, she was designated to testify about "[t]he mental and physical health care treatment administered to Reginald Cornelius Latson during his incarceration at MCTC, including communications among Mr. Latson's treatment team, the selection of individuals for Mr. Latson's treatment team, and oversight over

treatment decisions." *Id*. at ¶ 3. At the beginning of her deposition, VDOC's counsel limited McGrady's testimony on this topic to mental health treatment only and indicated that McGrady would not be testifying about physical health care. Despite this limitation, McGrady testified that she had never seen Latson's treatment plan and could not answer questions about it. McGrady was also designated to testify on the topic of "[t]raining provided to . . . mental health care treatment team members at MCTC, including but not limited to those responsible for the care of Reginald Cornelius Latson." *Id.* at ¶ 2. She was unable to answer questions regarding what training VDOC or MCTC provided that covered Autism Spectrum Disorder and how that training was tracked. The defendants argue that there was no prejudice to the plaintiff because both of these topics are irrelevant to the plaintiff's claims.

Terry Richards is Chief of Security at MCTC. He was deposed only as a representative of VDOC. He testified that his sole preparation for the deposition was a ten-minute meeting with counsel and that he did not review any documents. Richards was designated to testify about "[t]raining provided to guards . . . at MCTC, including but not limited to those responsible for the care of Reginald Cornelius Latson." *Id*. at ¶ 2. He was unfamiliar with training documents shown to him during the deposition and could not answer questions about training provided to correctional officers. He indicated that VDOC's Academy of Staff

Development or the MCTC training department would be able to answer those questions. VDOC contends that Richards's responses were appropriate because he was only designated to testify about training at MCTC, not within VDOC more generally. Additionally, VDOC argues that training provided to staff not named as individual defendants is irrelevant to the plaintiff's claims.

Sarah Angliker is the Clinical Social Work Supervisor at MCTC. She was deposed as an individual fact witness and also as a representative of VDOC. Her sole preparation for her Rule 30(b)(6) deposition was a 15-minute meeting with counsel. She was designated to testify about "Mr. Latson's access to the commissary, library, recreation, phone, TV, radio, books, and magazines while at MCTC." *Id*. at ¶ 8. She could not testify to the types of stimulus that were in Latson's cell. She did not review library logs and could not say whether Latson had accessed the library. She could not say whether or how often Latson had accessed the commissary.

Angliker was also designated to testify on the topic of "MCTC's provision of hygiene items to Mr. Latson, including toilet paper, toothbrush and toothpaste." *Id.* at ¶ 9. She could not say how long Latson went without these items, nor did she know whether MCTC personnel helped Latson order items. VDOC argues that Angliker provided adequate testimony on these topics and that she could not be expected to provide information for which no records are kept. VDOC further

contends that the plaintiff ultimately obtained this information from two other witnesses, and that the plaintiff himself should know the answers to questions on these topics. VDOC again argues that this information is irrelevant because neither a lack of stimulus nor a lack of hygiene items can create a viable constitutional claim regarding conditions of confinement.

Dara Robichaux Watson, currently the Warden at MCTC, was the Assistant Warden during the events in question and is a named defendant in this case. She was deposed in her individual capacity and as a representative of VDOC. She was designated to give testimony on most of the Rule 30(b)(6) deposition topics. One of those topics covered "[p]olicies, procedures and practices of VDOC . . . applicable to MCTC regarding . . . [t]he intake process [and] [t]he use of administrative segregation, solitary confinement, restricted housing and/or crisis cells." *Id.* at ¶ 1b-c. She did not review any documents in preparation for her deposition. She met with counsel for about an hour more than a month before her deposition. She was unable to testify about certain policies related to intake and segregation. VDOC argues that the plaintiff's focus on policies is irrelevant to the issues in this case because adherence to or derivation from policies cannot form the basis of the claims asserted. Therefore, VDOC contends that the plaintiff was not prejudiced by any deficiencies in Watson's testimony.

II.

Rule 30(b)(6) states that organization representatives in a deposition "must testify about information known or reasonably available to the organization." An organization "must make a good-faith effort to designate people with knowledge of the matter sought by the opposing party and to adequately prepare its representatives so that they may give complete, knowledgeable, and nonevasive answers in deposition." *Spicer v. Universal Forest Prods., E. Div., Inc.*, No. 7:07cv462, 2008 WL 4455854, at *3 (W.D. Va. Oct. 1, 2008).

"The court may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Upon granting a motion to compel, I must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless I find that an award of expenses would be unjust. Fed. R. Civ. P. 37(a)(5)(A). In determining an appropriate sanction, I should consider:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice [its] noncompliance caused [its] adversary, which necessarily includes an inquiry into the materiality of the evidence [it] failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).[1]

I find that VDOC violated the requirements of Rule 30(b)(6) and acted in bad faith by failing to produce prepared witnesses who could answer questions that clearly fell within the narrow topics on which the witnesses above were designated to testify. Rule 30(b)(6) witnesses cannot simply rely on their personal knowledge. They must undertake some investigation to obtain information reasonably available to the organization. The witnesses above did nothing more than meet briefly with counsel. Their failure to prepare for their depositions by talking to colleagues and reviewing documents demonstrated bad faith.

However, the plaintiff has suffered minimal prejudice as a result of VDOC's lack of preparation. The plaintiff conducted 26 depositions and received thousands of pages of documents in discovery in this case. It appears as though most if not all of the questions at issue were answered, at least in part, through other witnesses or documentary evidence. It is true that the plaintiff cannot be expected to prove a negative and might not know exactly what information he is lacking. Even so, he has not identified specific material information that he was unable to obtain. While I sympathize with counsel's frustration about time wasted in preparing for

---

[1] This four-factor test applies where the movant seeks default judgment as a sanction. *See, e.g.*, *Kelly v. SunTrust Bank*, 589 F. App'x 146, 147 (4th Cir. 2015) (unpublished). Latson does not seek default judgment, but I nevertheless find that the four-part test provides a useful framework for analyzing the instant motion.

depositions for which VDOC's witnesses did not prepare, such unnecessary costs do not prejudice the plaintiff's case.

With respect to the third and fourth factors, there is a need to deter the type of noncompliance perpetrated by VDOC. However, I do not find that it is necessary to reconvene depositions in this case. Under the Federal Rules, the scope of discovery is broad, but it must be

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Reconvening depositions in Washington, D.C., as the plaintiff requests, would be costly, time-consuming, and probably minimally fruitful.

Instead, I will permit the plaintiff to propound additional requests for admission and interrogatories on the deposition topics that are the subject of his Motion to Compel. The requests and interrogatories must be served upon VDOC within 14 days of the date of this Opinion and Order. VDOC must respond to the new requests and interrogatories within 14 days of their receipt. In the event the plaintiff wishes to supplement his response to the defendants' Motion for Summary Judgment based upon VDOC's response to the requests and interrogatories, he

must file the supplement within 7 days of the receipt of the responses to the requests and interrogatories, and the defendants may reply within 7 days thereafter.

I will require VDOC to pay the plaintiff's attorneys' fees and costs incurred in preparing the Motion to Compel and the additional written discovery permitted. The plaintiff may submit an itemization of fees and costs after serving the additional written discovery permitted. The defendants may respond to such itemization within 14 days after filing, and the plaintiff may reply within 7 days thereafter.

Accordingly, it is **ORDERED** that Plaintiff Reginald Cornelius Latson's Motion to Compel Additional 30(b)(6) Testimony and for Associated Costs and Fees, ECF No. 176, is GRANTED IN PART AND DENIED IN PART, as set forth herein.

ENTER: May 14, 2018

/s/ James P. Jones
United States District Judge