# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **REGINALD CORNELIUS LATSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16CV00039 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **HAROLD W. CLARKE, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Caitlin Marie Kasmar, Andrew R. Louis, and John Bell Williams III, Buckley Sandler LLP, Washington, D.C., and Elliot M. Mincberg, Washington Lawyers' Committee for Civil Rights and Urban Affairs, Washington, D.C., for Plaintiff; Jeff W. Rosen, Pender & Coward, PC, Virginia Beach, Virginia, and Laura Maughan, Office of the Attorney General, Richmond, Virginia, for Defendants.*

In advance of trial, the parties have filed motions in limine seeking the exclusion of certain expert witness opinion testimony. The motions have been fully briefed and are ripe for decision.

The plaintiff, Reginald Cornelius Latson, a former inmate with the Virginia Department of Corrections ("VDOC"), is alleged to suffer from autism spectrum disorder, post-traumatic stress disorder, and intellectual disability. He asserts in this action that he was denied proper medical treatment for these conditions and subjected to abusive conduct, lack of due process, and retaliation during his incarceration for eight months in 2014-2015 at the Marion Correctional Treatment

Center ("MCTC"), a VDOC facility. In 2015, at age 24, he was pardoned by the Governor of Virginia. Latson asserts claims based on the First, Eighth, and Fourteenth Amendments to the Constitution, as well as the Americans with Disabilities Act and the Rehabilitation Act. The present defendants are the VDOC, Harold W. Clarke, Director of VDOC, and Larry Jarvis and Dara Robichaux, the former Warden and Assistant Warden, respectively, of MCTC.

Latson moves to exclude or limit the trial testimony of three of defendants' designated experts — Aradhana Bela Sood, M.D., James R. Thompson, and Carl A. Manis. In turn, the defendants wish to exclude the testimony of one of Latson's experts, Johannes Rojahn, Ph.D. I will consider these motions seriatim.[1]

*Aradhana Bela Sood, M.D.*

Dr. Sood is a psychiatrist and Professor of Psychiatry and Pediatrics at Virginia Commonwealth University and has been board certified in both adult and child psychiatry for many years. She is a retained expert for the defendants and has submitted two disclosures in the form of letter reports, the first dated October 11, 2017, and a supplemental report dated October 27, 2017. In addition, her

---

[1] Of course, pretrial rulings on motions in limine as to particular evidence are usually conditional, based upon events at trial. *United States v. Dalton,* No. 1:17CR00024, 2018 WL 356205, at *1 n.1 (W.D. Va. Jan. 10, 2018). However, in the event counsel desires the court to reconsider any ruling limiting or excluding testimony made herein because of later events at trial, I direct counsel not to refer to or seek to introduce the subject evidence without first seeking a ruling by the court outside of the jury's presence.

deposition was taken by the plaintiff's counsel on December 4, 2017. Dr. Sood has never examined Latson, and bases her medical opinions on her knowledge and experience and her review of relevant documents.

Latson does not contest Dr. Sood's qualifications or her ability to state opinions as to his medical conditions and treatment. Instead, Latson wishes to exclude what he views as inadmissible opinions by Dr. Sood regarding Lisa Greenman, an attorney who served as an advocate for Latson during his incarceration and who likely will be called as a fact witness for him at trial.

Presumably, Latson intends to use Greenman's communications with MCTC staff to demonstrate that they were aware of his suffering but failed to adequately treat him. In her supplemental report, Dr. Sood addresses Greenman's communications with MCTC and opines that Greenman's conclusions regarding Latson's conditions were erroneous and of no value to the treatment staff. While those opinions are not objectionable on their own, some of Dr. Sood's statements are beyond the scope of proper expert testimony. For example, Dr. Sood states that Greenman's emails "were *sent to create an impression* that Mr. Latson was suffering because of the conditions of the MCTC and that he was regressing." Mem. Supp. Pl.'s Mot. to Limit Expert Test. of Dr. Aradhana Bela Sood, Louis Decl. Ex. B, Sood Suppl. Report 5, ECF No. 184-3 (emphasis added). In addition, Dr. Sood is of the view that Greenman's frequent emails to MCTC staff "are the

foundation of *creating a documentation trail* that underscores the allegations *in this litigation* with Mr. Latson's treatment." *Id.* at 4 (emphasis added). While Dr. Sood can explain why, in her opinion, Greenman's concerns about Latson's condition were not useful because they were contrary to the recorded observations of Latson by MCTC staff, her comments suggesting that Greenman was simply trying to build a case are out of bounds. Conclusions about Greenman's motivations and credibility are best left to the jury, without comment by Dr. Sood.

*Johannes Rojahn, Ph.D.*

The defendants have moved to strike the expert designation of Johannes Rojahn, Ph.D. Dr. Rojahn is a Professor Emeritus of Psychology at George Mason University who was retained in 2014 by the U.S. Department of Justice to evaluate Latson's treatment at MCTC prior to the commencement of this litigation. He prepared a report of his evaluation dated February 16, 2015, in which he found that the treatment of Latson's behavioral problems at MCTC was not effective. The defendants assert that Latson's expert designation of Dr. Rojahn was untimely and his opinions are irrelevant.

Despite best efforts, the scheduling in this case of pretrial disclosures, discovery, and the trial itself has proceeded in fits and starts and viewed as whole, is somewhat muddled. Following the transfer of the case to this court from the Eastern District of Virginia, the initial Scheduling Order, entered November 1,

2016, set a trial for December 2017. On the joint motion of the parties, a first Amended Scheduling Order, entered July 31, 2017, continued the trial to February of 2018. That order also required Latson to "serve reports from retained expert witnesses on the opposing parties by no later than 150 days before trial." ECF No. 132. Approximately a month before the scheduled trial, the defendants moved to postpone it on the ground that they had lost their lead attorney, which motion was granted. On January 31, 2018, the court scheduled the present trial dates of January 7 to 21, 2019.

On December 8, 2017, Latson disclosed Dr. Rojahn as a non-retained expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). At that time the case was still set for trial in February of 2018, and the defendants argue that the disclosure was untimely and prejudicially so, since the discovery cutoff was (and remains) January 12, 2018.

In response, Latson points out that Dr. Rojahn is a non-retained expert and thus his disclosure was not scheduled by order of the court but was governed by Federal Rule of Civil Procedure 26(a)(2)(D)(i) which requires expert disclosures to be made 90 days before trial. Thus the remedy lies in Rule 37(c)(1) (failure to disclose or admit) rather than Rule 16(f)(1)(C) (failure to obey a scheduling order). Latson concedes that his disclosure of Dr. Rojahn was ten days late, but argues that such untimely disclosure was substantially justified and harmless. Specifically,

Latson contends that (1) the defendants suffered no harm and could have cured any surprise; (2) there will be no disruption to trial, which is scheduled months from now; (3) Dr. Rojahn's testimony is important; and (4) the delay in disclosure was justified. *See Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 726 (E.D. Va. 2001) (describing proper factors for court to consider under Rule 37(c)(1)). Although I do not find Latson's argument regarding justifiable delay persuasive, I do agree with the rest of his contentions.[2]

"District courts are accorded broad discretion in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (internal quotation marks and citations omitted). Courts are guided by the following factors when making this determination: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for untimely disclosure. *Bresler*, 855 F.3d at 190; *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

---

[2] Latson argues that disclosure of Dr. Rojahn was justified due to counsel's preparations for an upcoming mediation of the case. I find this argument unpersuasive, in light of the number of attorneys representing Latson and the relatively small effort required to make a timely disclosure.

The primary purpose of Rule 37(c) is to prevent ambush at trial, and "the focus of a preclusion inquiry is mainly upon surprise and prejudice." *Michelone v. Desmarais*, 25 F. App'x 155, 158 (4th Cir. 2002) (unpublished) (citation omitted). The defendants cannot reasonably claim surprise by the ten-day untimely disclosure because they had Dr. Rojahn's 2015 report before litigation commenced. In fact, Latson obtained the report through discovery produced by the defendants. The report has also been mentioned on more than one occasion during depositions. *See e.g.,* Opp'n Defs.' Mot. Strike Expert Designation Johannes Rojahn, Williams Decl. Ex. A, Sood Dep. 175, ECF No. 193-2; *id* at Ex. B, McGrady Dep. 191, ECF No. 193-3. Latson intends to call Dr. Rojahn to testify about the facts and opinions set forth in his report. Therefore, if there is any surprise to the defendants, it is limited simply to the fact that Dr. Rojahn may testify at trial, not to any of the substantive opinions in his report.

Of course, if there was any doubt as to Dr. Rojahn's opinions, the defendants could have easily cured such doubt by deposing Dr. Rojahn. After the disclosure, they still had over a month within the discovery period to do so. Moreover, at no time did the defendants seek permission to do so after the close of discovery. Instead, they waited until after the discovery and summary judgment deadlines to file their present motion. There would have been no actual disruption to trial or other docket concerns, because trial is not scheduled to begin until January 7,

2019. *See Scott v. Holz-Her, U.S., Inc.*, Civil No. 6:04CV00068, 2007 WL 3171937, at *7 (W.D. Va. Oct. 26, 2007) (finding that any potential harm to late expert disclosure was mitigated by trial date four months away).

The third factor, importance of the evidence, also weighs against the defendants' motion. Dr. Rojahn conducted an independent evaluation of Latson and the conditions of his confinement during the period at issue in this case. His report was based on a first hand interview with Latson and MCTC staff. Therefore, his testimony will be important in providing insight into Latson's condition during his incarceration at MCTC, which makes his testimony uniquely relevant.

The defendants also argue that Dr. Rojahn's testimony is irrelevant because his opinions demonstrate that he felt Latson would be better off out of prison. For the same reasons that Dr. Rojahn's testimony is important under the previous analysis, I find his opinions are relevant and admissible.

*James R. Thompson and Carl A. Manis.*

Latson moves to exclude the testimony of James R. Thompson and Carl A. Manis, both VDOC employees. Thompson is a psychologist providing mental health treatment to inmates at Buckingham Correctional Center, a VDOC facility. He holds a masters degree in psychology and has been employed in similar positions by the VDOC for 31 years at several different prisons. Manis is the

Warden of Wallens Ridge State Prison, a VDOC facility. He has been employed by the VDOC for 29 years and has been a prison warden since 2011. Both witnesses were disclosed as non-retained experts on October 27, 2017, in the form of letter reports dated that day.[3] Their depositions were taken on December 12, 2017 (Manis) and December 14, 2017 (Thompson). Thereafter, on December 19, 2017 (Manis) and December 21, 2017 (Thompson), the defendants provided supplemental report letters to Latson's counsel.

In summary, Thompson opines that "Latson's health care and accommodations were reasonable," and "MCTC was not deliberately indifferent to Mr. Latson's disability." Mem. Supp. Mot. Exclude or Limit Certain Expert Test, Louis Decl. Ex. A, Thompson Report 3, ECF No. 186-2. Thompson also is of the opinion that "to a reasonable degree of medical certainty, Mr. Latson's medical care at MCTC was adequate." *Id.* at 4. His opinions were based upon his "review of the documents and experience in the VADOC." *Id.* at 3.

Manis opines that "Latson's conditions of confinement at MCTC were reasonable," "Latson's access to medical and mental health services were [sic] more than adequate," and "[t]he accommodations received by Mr. Latson while he was housed at MCTC were reasonable." *Id.* at Ex. B, Manis Report 4-5, ECF No.

---

[3] October 27, 2017, (120 days before trial) was the deadline date for "responding reports from retained rebuttal expert witnesses," according to the July 31, 2017, Amended Scheduling Order, ECF No. 132.

186-3. Manis bases his opinions "on [his] experiences in the VADOC," as well as VDOC policies and procedures. *Id.* at 4.

Latson has filed two motions seeking to exclude testimony from these witnesses. In his first motion, ECF No. 151, filed January 2, 2018, Latson contends that the disclosures were untimely and inadequate. He argues that (1) the witnesses were retained or specially employed to provide expert testimony, rather than being non-retained experts as claimed, and accordingly the reports lack the requirements of a retained expert's disclosure; and (2) that the witnesses were not true rebuttal experts, and thus their disclosures were untimely. Latson complains that the untimeliness particularly prejudiced him because the supplemental disclosures came after the witnesses' depositions. In response, the defendants argue that Thompson and Manis are in fact non-retained rebuttal experts. They contend that the supplemental report letters contain no substantive changes to the opinions of the witnesses previously disclosed, but merely add information relevant to that required for disclosures of retained experts, as "an act of precaution." Defs.' Resp. Opp'n Mot. Strike and Exclude Test. 9, ECF No. 158. Finally, the defendants assert that any irregularities in the disclosures should not result in any exclusion of the witnesses' testimony or other sanction.

In support of his second motion to exclude Thompson and Manis, filed February 28, 2018, after the trial had been continued to 2019, Latson contends that

neither witness "possesses relevant experience outside the VDOC system that would allow him to apply industry standards or common practices to the issues upon which they opine." Mem. Supp. Mot. Exclude or Limit Certain Expert Test. 1, ECF No. 186. Moreover, it is argued, neither expert attempts to address any such industry-wide standards, customs, or practices regarding adequate care and treatment. In the alternative, Latson requests that their testimony be limited to rebutting whether MCTC followed VDOC policies with respect to his treatment.

Certainly Thompson's academic background affords him specialized knowledge in psychology. However, he does not rely on that knowledge as a basis for his opinions. Instead, his opinion that Latson's health care and accommodations were reasonable is based solely on a comparison with VDOC policies. For example, he states that VDOC "expedited a direct assignment from a Virginia jail to MCTC. This is the first time a direct jail intake is known to have happened at MCTC in at least 13 years. This assignment to a treatment center represents an extraordinary accommodation in support of Mr. Latson's health and well-being." *Id.* at Louis Decl. Ex. A, Thompson Report 3, ECF No. 186-2. Furthermore, Thompson basis his opinion that Latson's accommodations and health care were reasonable because VDOC policy "requires that psychiatrists see patients at MCTC a minimum of once every 60 days," and Latson was treated "on an average of once every fourteen days." *Id.*

I also agree with Latson that Manis has insufficient specialized knowledge outside of the VDOC setting, and that his opinions are essentially based on VDOC standards. Manis reaches his opinions by comparing the policies and standards set forth in the VDOC Operating Procedures with the treatment Latson was provided. Manis' experience is limited to the VDOC, and that experience is inapplicable to the issue of whether Latson's treatment and care was reasonable compared with objective, non-VDOC standards, customs or practices. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendments (where expert relies solely on experience, he must explain "why that experience is a sufficient basis for [his] opinion.").[4]

Because I find that the defendants have failed to show that Thompson and Manis have sufficiently supported their opinions on the reasonableness or adequacy of the medical treatment or conditions of confinement of the plaintiff or whether such treatment or conditions met the standard of care, I will exclude such testimony. On the other hand, I find that their testimony as to the policies and procedures of the VDOC applicable to the plaintiff at MCTC and their opinions as to the extent to which the medical treatment and conditions of confinement of the

---

[4] In his deposition, Manis testified that his experience outside of the VDOC that informed his opinion was a trip "six or eight weeks ago" to a mental health correctional facility in North Carolina and "[i]t was very similar to what [MCTC] does." Louis Decl. Ex. D, Manis Dep. 175, ECF No. 186-5. I do not find that limited experience sufficient to qualify the witness to give the opinions sought.

plaintiff met or exceeded the minimum requirements of such policies and procedures is relevant to issues in the case. *See Porter v. Clarke,* 290 F. Supp. 3d 518, 532 (E.D. Va. 2018) (discussion of relevancy of prison policies regarding proof of subjective element of Eighth Amendment deliberate indifference claim), *appeal docketed*, No. 18-6257 (4th Cir. Mar. 15, 2018). Such testimony is supported by the witnesses' experience, and will assist the jury in resolving factual disputes in the case.

Under the circumstances, I find that any procedural defects in the disclosures of these witnesses, even if shown, are harmless, and I will deny Latson's motion to exclude their testimony on such grounds.

Accordingly, it is **ORDERED** as follows:

1. Plaintiff Reginald Cornelius Latson's Motion to Strike and Exclude the Reports and Testimony of Purported Experts Carl A. Manis and James R. Thompson, ECF No. 151, is DENIED;

2. Defendants' Motion to Strike Expert Designation of Johannes Rojahn, Ph.D, ECF No. 174, is DENIED;

3. Plaintiff Reginald Cornelius Latson's Motion to Limit the Testimony of Dr. Aradhana Bela Sood, ECF No. 183, is GRANTED. Dr. Sood will not be permitted to state her opinion as to the motivations or credibility of Lisa Greenman in Greenman's interactions with MCTC staff concerning the plaintiff; and

4. Plaintiff Reginald Cornelius Latson's Motion to Exclude or Limit Certain Expert Testimony, ECF No. 185, is GRANTED IN PART AND DENIED IN PART. Witnesses Thompson and Manis will be permitted to testify as to the policies and procedures of the VDOC applicable to the plaintiff at MCTC and the extent to which the medical treatment and conditions of confinement of the plaintiff met or exceeded the minimum requirements of such policies and procedures. They will not be permitted to testify as to their opinions of the reasonableness or adequacy of the medical treatment or conditions of confinement of the plaintiff or whether such treatment or conditions met the standard of care.

ENTER: August 16, 2018

/s/ *James P. Jones*
United States District Judge